IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TANNER KRESAL, on behalf of himself
and all others similarly situated,

                        Plaintiff,

    v.

SECURA INSURANCE HOLDINGS, INC.,
a/k/a SECURA INSURANCE, INC., a/k/a
SECURA INSURANCE, A Mutual Company,
a/k/a SECURA INSURANCE COMPANIES
and KOHN LAW FIRM, S.C.,

                        Defendants.

OPINION AND ORDER

17-cv-766-wmc

---

In this civil action, plaintiff Tanner Kresal, on behalf of himself and other similarly situated, claims that defendants SECURA Insurance company and Kohn Law Firm, S.C., violated the Driver's Privacy Protection Act, 18 U.S.C. § 2721 *et seq.* ("DPPA"). Specifically, plaintiff alleges that defendants publicly disclosed Kresal's driver's license number on forms for a proposed bench warrant and certificate of judgment submitted to the Circuit Court for Eau Claire County, Wisconsin. Before the court is defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting that plaintiff failed to allege: (1) the information was obtained from a "motor vehicle record"; and (2) the claimed conduct falls outside uses expressly permitted by the DPPA. (Dkt. #30.) On June 6, 2018, the court held an oral argument on defendants' motion to dismiss. Having considered the parties' arguments, the court concludes that plaintiff's allegations foreclose a finding that the information was obtained from the motor vehicle record. Accordingly, defendants' motion to dismiss will be granted.

ALLEGATIONS OF FACT[1]

On or about June 2, 2014, plaintiff Tanner Kresal was involved in an automobile accident with a van owned by Abby Vans, Inc. Defendant Secura insured Abby at the time of the accident, and it paid claims covering damages to Abby's van. Then, as Abby's subrogee, Secura brought a state court action to recover those payments from Kresal, eventually obtaining a money judgment in *Secura Ins. v. Kresal*, No. 2015-CV-000681 (Eau Claire Cty. Cir. Ct. March 7, 2016). Presumably after informal collection efforts failed, Secura retained counsel, co-defendant Krohn Law Firm to pursue collection, which it did by filing for a proposed bench warrant and supporting documentation in the form of a "Certificate of Judgment" against Kresal in Eau Claire County Circuit Court on or about September 9, 2016. Both of these documents were prepared using forms provided by that court or by the Wisconsin Department of Transportation. (Shafer Decl., Exs. 1, 2 (dkt. ##14-1, 14-2).)[2]

Because the proposed bench warrant and Certificate of Judgment each included plaintiff's actual driver's license number ("DLN"), plaintiff alleges these filings included "personal information" as that term is defined by 18 U.S.C. § 2725(3). (Am. Compl. (dkt. #24) ¶ 64.) Plaintiff also alleges that the DLN "was derived from Plaintiff's Wisconsin

---

[1] In resolving a motion to dismiss under Rule 12(b)(6), the court takes all of the factual allegations in the complaint as true and draws all inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007).

[2] The documents were actually filed with the court on September 12, 2016. The court may consider the filings themselves in deciding the pending motion to dismiss because both were referenced in the complaint and central to plaintiff's claims. *See Geinosky v. City of Chi.*, 675 F.3d 743, 745 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.").

driver's license card." (*Id.* at ¶ 66.) In particular, plaintiff alleges that "[f]ollowing an accident with a person insured by Defendant SECURA, Plaintiff was directed, instructed and ordered by law enforcement officials to give them his Wisconsin's driver's license card." (*Id.* at ¶ 71.) Consistent with that instruction, plaintiff further alleges he "gave them his Wisconsin driver's license card." (*Id.* at ¶ 72.) Law enforcement then listed Kresal's DLN on an accident report, which was eventually obtained by defendants form the police. (*Id.* at ¶¶ 74-75.)

Plaintiff further alleges that the disclosure of his DLN was "not essential to serve any permissible purpose under 18 U.S.C. § 2721(b)." (*Id.* at ¶ 80.) Material to defendant's motion, plaintiff alleges that "Defendants are not a 'government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions' when they published Plaintiff's DLN in the aforementioned state court filings." (*Id.* at ¶ 91 (citing 18 U.S.C. § 2721(b)(1)).) Plaintiff similarly alleges that "Defendants were not using Plaintiff's DLN 'in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including . . . the execution or enforcement of judgment and orders." (*Id.* at ¶ 94 (citing 18 U.S.C. § 2721(b)(4)).) With respect to uses of personal information expressly permitted by the DPPA, plaintiff finally points out that as of "July 1, 2016, the Wisconsin Supreme Court[] expressly prohibited the public disclosure of a person's DLN in Wisconsin State Court filings, by virtue of its enactment of Wis. Stat. sec. 801.19, thus eliminating any 'permissible purpose' for the disclosure of a person's DLN in Wisconsin

3

court filings." (*Id.* at ¶¶ 91, 94.)

OPINION

As a general matter, the DPPA provides that:

> A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity:
>
> **(1)** personal information, as defined in 18 U.S.C. 2725(3), about any individual obtained by the department in connection with a motor vehicle record, except as provided in subsection (b) of this section[.]

18 U.S.C.A. § 2721(a). The Act also provides that it "shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." 18 U.S.C. § 2722(a); *see also* 18 U.S.C. § 2721(c) (prohibiting resale and redisclosure). Moreover, the Act creates a private right of action against "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter." 18 U.S.C.A. § 2724(a); *see also Reno v. Condon*, 528 U.S. 141, 146 (2000) (describing private remedies).

In subsection (b), the DPPA sets forth 14 such "permitted uses," two of which are pertinent to the present motion to dismiss:

> (1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.
> . . .
> (4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body,

4

> including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and
>
> orders, or pursuant to an order of a Federal, State, or local court.

18 U.S.C.A. § 2721(b).

Defendants argue that dismissal of the amended complaint is appropriate here on two, independent grounds: (1) plaintiff failed to plausibly allege that his driver's license number was obtained "from a motor vehicle record," as required under § 2722(a); and (2) plaintiff failed to allege that defendants' use does not fit within either of the two of the permitted uses quoted above under § 2721(b). Because the court finds the first ground dispositive, it need no address whether either of the permitted use exceptions apply.

As set forth above, for defendants to be liable under § 2722(a), plaintiff must plausibly allege that plaintiff's DLN was obtained "from a motor vehicle record." In his amended complaint, plaintiff alleges that he was required to provide his driver's license to law enforcement at the scene of the accident, and the police officer listed Kresal's DLN on the accident report, which defendants then obtained from that report. (Am. Compl. (dkt. #24) ¶¶ 66-76.) Defendants contend that since plaintiff expressly alleges that the information came from the accident report, not from a motor vehicle record or at least not directly from it, the requirement of § 2722(a) has not been met, and plaintiff has pleaded himself out of court.[3] Accordingly, the parties dispute centers on whether the personal

---

[3] Consistent with this court's decision in *Eggen v. WESTconsin Credit Union*, No. 14-CV-873-BBC, 2016 WL 4382773 (W.D. Wis. Aug. 16, 2016), defendants do not argue that a driver's license is not a motor vehicle record. *Id*. at *3 ("[D]efendant's argument that a driver's license is not a "motor vehicle record" is difficult to take seriously. After all, a driver's license is created by the Department

5

information must be obtained *directly* from a motor vehicle record, or whether a "once-removed" process as alleged by plaintiff is sufficient.

The Seventh Circuit appears to have answered this question in *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937 (7th Cir. 2015), holding that: "[t]he DPPA proscribes only the publication of personal information that has been obtained from motor vehicle records. The origin of the information is thus crucial to the illegality of its publication—the statute is agnostic to the dissemination of the very same information acquired from a lawful source." *Id*. at 949. In opposition to defendants' motion, plaintiff relies on a Northern District of Illinois opinion decided some six months after *Dahlstrom*. In *Pavone v. Law Offices of Anthony Mancini, Ltd.*, 118 F. Supp. 3d 1004 (N.D. Ill. 2015) ("*Mancini*"), the plaintiffs alleged that a defendant law firm "obtained Illinois traffic reports and used the information in those reports to send targeted solicitations to persons involved in car accidents." *Id.* at 1005. In determining whether the information was obtained "from a motor vehicle record," the court identified the "key question" as whether the "Illinois Secretary of State was the original source of the information," and because it was plausible that the "information listed on the crash reports came from motor vehicle records published by the Secretary of State," the court denied the motion to dismiss. *Id.* at 1007. Indeed, the plaintiffs in *Mancini* affirmatively alleged, in part, that the accident reports *were* obtained from the Illinois Secretary of State. *Id.* (citing Am. Compl. ¶ 13).

The *Mancini* court then went on to state in *dicta*, that "even if that information is

---

of Motor Vehicles and it is a record of the information on the license.").

not directly supplied by the Secretary of State, it is plausible that the officers who write the crash reports copy the name, license number, and address from the driver's license, which is a motor vehicle record." *Id.* Plaintiff's reliance on this *dicta* is flawed. As an initial matter, district courts actually required to decide this question have held otherwise, holding that personal information obtained from an individual who provided his or her driver's license for inspection is not a motor vehicle record subject to the DPPA's protection. In *Whitaker v. Appriss, Inc.*, 266 F. Supp. 3d 1103 (N.D. Ind. 2017), the court explained that the "decisive factor" in determining this issue is "how the police officer who created the accident report obtained the driver's license and vehicle title information—from the plaintiffs' themselves or from the state department of motor vehicles." *Id.* at 1109 (quotation marks and internal citation omitted). At summary judgment in *Whitaker*, the facts established -- as plaintiff affirmatively alleges here -- that the plaintiff handed over her driver's license and registration to a police officer. *Id.* at 1105. The *Whitaker* court held that "[w]hen the holder of a driver's license hands over her personal information to an entity other than a DMV, even when that information is printed onto a driver's license, the DPPA doesn't protect it." *Id.* at 1110.

In so holding, the *Whitaker* court relied in part on another Northern District court decision issued just a month after *Mancini*. In *Pavone v. Meyerkord & Meyerkord, LLC*, 118 F. Supp. 3d 1046 (N.D. Ill. 2015) ("*Meyerkord*"), the court similarly rejected a DPPA claim based on an allegation that plaintiffs provided the personal information to the police at the scene of the accident, explaining that plaintiffs "fail[] to allege facts connecting the personal information in the [Traffic] Report to the DMV to demonstrate that it was

7

originally derived from a motor vehicle record." *Id.* at 1055. In *Whitaker*, the court also followed the reasoning of the Second and Eleventh Circuits' holdings that a plaintiff may not claim the protection of the DPPA for use of information taken from a driver's license provided by the plaintiff, rather than obtained from the state motor vehicle department. *See Fontanex v. Skepple*, 563 F. App'x 847, 848 (2nd Cir. 2014) ("DPPA does not protect against use of personal information obtained from a driver's license provided by the holder as proof of identity to gain access to a facility."); *Siegler v. Best Buy Co. of Minn.*, 519 F. App'x 604, 605 (11th Cir. 2013) (customer allowing cashier access to scan driver's license removed the information obtained from the DPPA's protections). While the *Whitaker* court acknowledged that both of these decisions could be distinguished by arguing that the plaintiffs both *volunteered* the driver's licenses, while a plaintiff providing a license to police at the scene of a car accident arguably has no choice but to do so, the court agrees that distinguishing based on "voluntariness" would make the DPPA's application problematic, particularly for third-party users like the defendants here.

Regardless, the Seventh Circuit held in *Dahlstrom* that the *origin* of the personal information is "crucial." *Dahlstrom*, 777 F.3d at 949. Accordingly, the court finds the reasoning of the Second and Eleventh Circuits, as well as those of the U.S. District Court for the Northern District of Illinois in *Whitaker* and *Meyerkord* persuasive. Therefore, plaintiff Kresal's affirmative allegation that the personal information contained in the accident report was obtained from plaintiff at the scene of the accident, even if from his driver's license as opposed to orally, rather than from a motor vehicle record directly, forecloses a finding that the disclosed information was obtained from a motor vehicle

8

record as a matter of law.[4]  Accordingly, the court will grant defendants' motion to dismiss.[5]

ORDER

IT IS ORDERED that:

1) Defendants' motion to dismiss (dkt. #30) is GRANTED.  Plaintiff's complaint is DISMISSED WITH PREJUDICE.

2) The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered this 11th of June, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[4] Even if the unfettered use of this information might be precluded by the police, who obtained the information from the driver's license under arguably coerced circumstances, an issue would remain whether a third-party would be precluded from doing so once subsequently published and made available by the police in an accident report.  All of the decisions this court relied upon did not need to reach this issue, having found the information unprotected, although *Whitaker* answered that question "yes."  This court similarly does not attempt an answer on this record.

[5] Of course, this opinion takes no position as to whether defendants' conduct runs afoul of Wis. Stat. § 801.19, which is not a claim pressed by plaintiff here, except as proof of improper use by defendants for purposes of determining the applicability of DPPA exceptions quoted above in § 2721(b)(1) & (2), an issue this court did not need to decide.